UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| NICHOLE R.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO.  3:20cv892 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application a period of disability and for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. § 423(d).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2023 (10D).

2. The claimant has not engaged in substantial gainful activity since December 12, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: epilepsy; disorders of the cervical and lumbar spine (with radiculopathy); major dysfunction of the right shoulder; fibromyalgia; anxiety; depression; and posttraumatic stress disorder ("PTSD") (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs; the claimant cannot climb ladders, ropes, or scaffolds; the claimant can occasionally balance (on uneven terrain and slippery surfaces); the claimant can occasionally stoop, kneel, crouch, and crawl; the claimant cannot have exposure to extreme cold, vibration, vibrating tools, unprotected heights, or moving mechanical parts; the claimant cannot operate a motor vehicle within the scope of employment (due to her history of seizures); the claimant can only engage in occasional operation of foot controls and occasional pushing and pulling with the bilateral lower extremities; the claimant requires the ability to alternate between sitting and standing at will at the workstation, which would not take her off task more than 10% of the workday (essentially, the claimant requires jobs that can be performed either sitting or standing at her option); and the claimant is limited to work involving only simple, routine tasks in an environment free from fast-paced production work (such as an assembly wherein all tasks must be completed within strict timeframes).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 2, 1977 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual

3

> functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 12, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 25-38).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on August 23, 2021. On October 4, 2021, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on November 10, 2021. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff alleges severe epilepsy; disorders of the cervical and lumbar spines with radiculopathy; major dysfunction of the right shoulder; fibromyalgia; anxiety; depression; and PTSD. (Tr. 26.) In October 2019, Jillorna A. Uceny, LCSW opined that Plaintiff had extreme limitations in understanding detailed instructions and marked limitations in remembering locations and very short and simple instructions, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and taking precautions against hazards. (Tr. 874-75.) Plaintiff also had extreme limitations in setting realistic goals or making plans independently of others. (Tr. 875.)  Plaintiff did not get along with co-workers during her last two years of employment and her physical limitations impacted her mental capacity. (Tr. 875.) Plaintiff also fatigued easily. (Tr. 875.) Plaintiff would be absent four days or more per month. (Tr. 876.)

Non-examining State agency reviewing doctors Kenneth Neville, Ph.D. and M. Brill, M.D. opined in October 2018 that Plaintiff had severe epilepsy and spine disorders as well as non-severe depression resulting in mild limitations in concentrating, persisting, or maintaining pace. (Tr. 82.) Dr. Brill opined that Plaintiff could perform light work with postural and environmental limitations. (Tr. 84-85.) Joelle J. Larsen, Ph.D. and Mangala Hasanadka, M.D. affirmed the opinions in December 2018. (Tr. 94-99.)

In support of remand, Plaintiff first argues that the ALJ did not properly evaluate opinion evidence. The ALJ found LCSW Ms. Uceny's opinion not persuasive. The ALJ opined that the

5

opinion was not generally supportable and not consistent with other record evidence. (Tr. 35.) The ALJ noted that while Plaintiff consistently presented with a depressed and anxious mood, her thought process was normal, she was oriented, and her memory was normal. (Tr. 35.) The ALJ also noted that neuropsychological testing had not been ordered and that Plaintiff had not been referred to a psychiatric specialist. (Tr. 35.) The ALJ also noted no memory, concentration, and orientation deficits and alert, cooperative, and engaged findings on exams and that Plaintiff denied suicidal ideation and had not been hospitalized for psychiatric purposes. (Tr. 35.) Plaintiff had been treated fairly conservatively for her impairments as well, with medications and individual therapy, resulting in a stable symptomology. (Tr. 35.)

Plaintiff contends that the ALJ made a mistake of fact in evaluating Ms. Uceny's opinion. Plaintiff points out that in contrast to the ALJ's conclusion that the record only showed normal thought process, the record frequently showed a disorganized thought process. (Tr. 357, 447-49, 451-53, 639, 643, 647, 666.) *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) (mistakes of fact compel remand). The ALJ noted that the record contained both abnormal findings of anxious and depressed mood, as well as normal findings such as full orientation, cooperation, and normal memory. (Tr. 35.) Plaintiff contends that the ALJ failed to explain why those abnormal findings were outweighed by the normal ones, nor why the abnormal findings in question did not render the opinion sufficiently supported by and consistent with the overall record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) ("An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence"); *Scott v. Barnhart*, 297 F.3d 589 (7th Cir. 2002).

Plaintiff notes that the record post-dating the last State agency opinion contains findings

6

of tearful/sad, anxious, depressed affect, depressed and anxious mood, flight of ideas, disorganized thought process, and limited impulse control with anger outbursts. (Tr. 638-47, 666, 683, 698.) Plaintiff argues that the ALJ interpreted these findings without expert input, and failed to explain why these myriad supportive findings did not render Ms. Uceny's opinion persuasive. *Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (ALJ fixated on "normal" examinations in the record and selectively discussed the evidence). The ALJ also remarked that the record showed that Plaintiff was "alert" upon examinations. (Tr. 35.) Plaintiff contends that the fact that an individual is alert upon examination simply means that he or she is responsive to their environment and that a finding that an individual is alert upon examination does not show that the individual does not have significant concentration limitations. *See John P. v. Saul*, 2019 WL 4072118 *10 (N.D. Ind. Aug. 28, 2019); *Milburg v. Colvin*, 2017 WL 1237970 *20 (C.D. Ill. Jan. 20, 2017).

Plaintiff also objects to the fact that the ALJ speculated that neuropsychological testing or a referral to a psychiatric specialist were required in order to substantiate the limitations recited in Ms. Uceny's opinion. SSR 86-8 ("Reasonable inferences may be drawn, but presumptions, speculations, and suppositions should not be substituted for evidence"). Plaintiff notes that the ALJ pointed to no evidence that such referrals were needed to render Ms. Uceny's opinion more persuasive. Plaintiff also argues that the fact that Plaintiff denied suicidal ideation and did not need to be hospitalized also does not render Ms. Uceny's opinion inconsistent with the record. Social Security Regulations do not require hospitalization for a severe mental impairment to be found to be a disabling condition. *Baird v. Astrue*, 2011 WL 529045 *18 (N.D. Ill. Feb. 3, 2011). Plaintiff submits that the ALJ—as a layperson—speculated that a psychiatric hospitalization or

7

suicidal thoughts were needed to support the opinion where no evidence suggested that that was the case. *Myles v. Astrue,* 582 F.3d 672, 677 (7th Cir. 2009) ("'Common sense can mislead; lay intuitions about medical phenomena are often wrong'").

In response, the Commissioner reiterates that the record reflects that at times Plaintiff's thought content was reality-based and relevant. However, as Plaintiff points out, reality-based thought content is not inconsistent with a disorganized thought process. This was a selective reading of the record, for the ALJ emphasized normal findings while failing to explain why probative abnormal findings did not support the opinion. *Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (ALJ fixated on "normal" examinations in the record and selectively discussed the evidence). That the record contains some findings of normal thought process did not absolve the ALJ from analyzing myriad findings of disorganized thought process. (AR 357, 447-49, 451-53, 639, 643, 647, 666.)

The Commissioner also argues that the ALJ was only required to minimally articulate her findings and that the ALJ here noted both findings of depressed/anxious mood and certain other normal findings. However, as Plaintiff has argued, the ALJ committed reversible legal error by failing to explain why those abnormal findings were outweighed by the normal ones, or why the abnormal findings in question did not render the opinion sufficiently supported by and consistent with the overall record. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010).

The Commissioner next maintains that the ALJ simply noted the lack of "more invasive" types of treatment to show that Plaintiff's treatment was conservative, and that the ALJ did not speculate that such treatment was required. The Commissioner argues that the ALJ did not

8

suggest that neuropsychological testing or referral to a psychiatric specialist were required to substantiate the limitations opined by Ms. Uceny. However, the plain language of the ALJ's decision contradicts this. The ALJ stated that "neuropsychological testing has not been ordered and it does not appear that the claimant has been referred to a psychiatric specialist." (AR 35.) The reasonable conclusion from this remark is that the ALJ found the opinion was unsupported because of the lack of this treatment.

Accordingly, for the above reasons, remand is required on the issue of the proper evaluation of the medical opinion evidence.

Next, Plaintiff argues that the ALJ's mental RFC assessment is not supported by substantial evidence. The State agency doctors opined that Plaintiff had no severe mental impairments. (Tr. 82, 94-99.) The ALJ found these opinions not entirely persuasive, and found that Plaintiff had severe depression, anxiety, and PTSD resulting in moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself. (Tr. 26, 28-31, 35-36.) The ALJ summarized some treatment notes and then found that Plaintiff was limited to work involving only simple, routine tasks in an environment free from fast-paced production work. (Tr. 30-31.)

The ALJ emphasized that Plaintiff exhibited numerous normal mental status examinations. (Tr. 34-36.) Plaintiff argues that the ALJ erred by speculating as to the meaning of the normal and abnormal mental health examinations in the record. Plaintiff points out that the only opinion as to Plaintiff's mental functionality in the record comes from treating LCSW Ms. Uceny. (Tr. 874-75.) As noted, the ALJ found that opinion not persuasive. (Tr. 35.) Plaintiff argues that by rejecting this opinion, the ALJ improperly substituted her lay judgment for that of a

9

treating provider. *Myles*, 582 F.3d at 677; *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it").

Plaintiff contends that the ALJ speculatively and selectively focused on certain normal findings such as Plaintiff being alert, oriented, and cooperative with unremarkable thought content, goal directed thoughts, and insightful thought process. (Tr. 34-36); *Gerstner*, 879 F.3d at 261-62; *O'Connor-Spinner*, 621 F.3d at 627. Plaintiff claims this was in error as the record contains significant abnormal mental status examinations post-dating the last, December 2018, State agency opinion. These later examinations evidenced tearful/sad, anxious, depressed affect, depressed and anxious mood, tearful affect, flight of ideas, disorganized thought process, and limited impulse control with anger outbursts. (Tr. 638-47, 666, 683, 698.) Plaintiff argues that the ALJ did not create a logical bridge from these repeatedly abnormal mental status examinations, especially disorganized thought process on numerous occasions, to the conclusion that Plaintiff could sustain simple tasks without fast production requirements. Plaintiff points out that she has alleged frequent panic attacks, mostly in crowded spaces and she had panic attacks twice daily. (Tr. 67.) She also alleged concentration deficiencies, a need to isolate, and problems remembering assignments. (Tr. 206, 209.) Plaintiff claims that examination abnormalities support these allegations and that further examinations reflect additional similar findings of depressed and anxious mood and affect, disorganized thought process, angry mood and affect, flight of ideas, and limited insight. (Tr. 357, 359, 363-69, 445-53.) Plaintiff concludes that findings of disorganized thought process and flight of ideas reasonably support that Plaintiff would not be able to sustain tasks of any complexity throughout the workday nor meet even an "average"

workday pace due to panic, a need to isolate, and problems remembering assignments. (Tr. 62, 206, 209, 701-02, 875); *Novak v. Berryhill*, 2017 WL 1163733 *7 (N.D. Ill. Mar. 29, 2017) (remanding where the record did not support inference that the claimant could engage in bursts of processing speed to make up for periods of low productivity throughout the day).

      In response, the Commissioner argues that the ALJ cited to relevant evidence that a reasonable mind would accept as adequate. However, the Commissioner fails to cite to any portion of the decision where the ALJ linked the cited evidence to the specific RFC limitations as required by SSR 96-8p. The ALJ may have cited certain normal and abnormal findings, Plaintiff's daily activities, and treatment, but the ALJ did not explain why that evidence led to the ultimate RFC findings in a way that permits judicial review as required by the Ruling's narrative discussion mandate. SSR 96-8p. The ALJ simply cited that evidence, then found that Plaintiff could do the RFC ascribed to her. (Tr. 36.) *Garcia v. Colvin*, 741F.3d 758, 762 (7th Cir. 2013) ("No physician testified—no medical records [re]vealed—that Garcia has the residual functional capacity ascribed to him by the [ALJ]"). Thus, remand is warranted on this issue. In a related argument, Plaintiff has also alleged that she would be off task more than 10% of a work-day and would be absent more than four days per month. These allegations should also be considered on remand.

      Next, Plaintiff argues that the ALJ failed to submit "new and potentially decisive" medical evidence of Plaintiff's physical condition to expert review. The last State agency opinion in this case dates to December 2018. (Tr. 98-99.) After that date, evidence of new conditions entered the record which was not reviewed by a doctor. Specifically, an EMG/NCV from October 2019 was abnormal in the bilateral lower extremities for chronic axonal lumbar radiculopathy in the left,

11

particularly at S1. There was also chronic axonal loss lumbar radiculopathy involving the right S1 root affecting the paraspinal muscle only. (Tr. 889-92.) Plaintiff contends that additional evidence from 2019 further reflects that the ALJ should have submitted records from Plaintiff's worsening condition to medical review. Specifically, an April 2019 examination showed difficulty with moving from sitting to standing with an unsteady, widened, and antalgic gait as well as lumbar pain to palpation and range of motion limitations. (Tr. 839.) A May 2019 examination showed marked asterixis in the arms and legs (Tr. 713.) A September 2019 examination showed moderate distress and Plaintiff had an antalgic gait with moderately expressed pain behavior. Plaintiff exhibited moderate lumbar pain to palpation with limited lumbar flexion and extension due to pain. (Tr. 829.) An examination also showed an antalgic gait with a limp favoring the right leg and difficulty moving from a sitting to standing position as well as lumbar abnormalities. (Tr. 834.) A lumbar spine imaging study from October 2019 showed lumbar spondylosis and facet hypertrophy at L4-5. (Tr. 880.)

Plaintiff points out that the State agency doctors were not aware of radiculopathy in her legs. (Tr. 79-86, 90-99.) Plaintiff argues that this was a new condition and constituted potentially decisive evidence the ALJ had to submit to medical scrutiny rather than interpreting herself without expert input. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (new and potentially decisive medical evidence must be submitted to medical scrutiny). Plaintiff suggests that had the ALJ submitted this evidence to medical review, a finding of disability may have resulted.

In response, the Commissioner argues that the ALJ considered evidence relating to Plaintiff's physical conditions, and notes that "[w]hile the State agency medical consultants did not have some of this evidence to review, the ALJ did properly consider the evidence of record

12

throughout the decision." The Commissioner remarks that the ALJ found the State agency doctors' opinion not entirely persuasive and that the medical evidence received since those opinions supported a more restrictive RFC due to testimony, a fibromyalgia diagnosis, and to prevent pain exacerbations. The Commissioner contends that updated opinions were not required as the record was sufficient to assess Plaintiff's RFC. According to the Commissioner, the ALJ did not have to seek additional information, as the ALJ properly cited relevant evidence of Plaintiff's physical conditions.

Clearly, the Commissioner's argument is not supported by Seventh Circuit precedent.. While it was the ALJ's responsibility to determine the RFC, the ALJ could only have done so by submitting this new raw medical evidence to review by a medical professional. *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018) (ALJ was not qualified to make his own determination without the benefit of an expert opinion). Because the State agency doctors did not have this evidence to review, the ALJ's RFC was not supported by substantial evidence. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJs required to rely on expert opinions instead of determining the significance of medical findings themselves). Therefore, remand is required.

Next, Plaintiff agues that the ALJ's physical RFC assessment is not supported by substantial evidence. The ALJ included a sit/stand option at will at the workstation without being off-task more than 10% of the workday in the RFC. (Tr. 30.) The ALJ found that the RFC was appropriate based upon Plaintiff's fibromyalgia and generalized body pain symptoms as well as her back and lower extremity pain. (Tr. 34, 36.) The ALJ found that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"), noting that while the DOT does not provide information on sit/stand options, the VE's testimony based on his knowledge and

13

experience was adopted. (Tr. 38.) Plaintiff contends that the VE's testimony was inconsistent with the DOT, claiming that the sit/stand option is inconsistent with sedentary work because, she argues, this permits her to stand more than she sits. Plaintiff further contends that the ALJ did not recognize this conflict and that this was an error under Social Security Ruling (SSR) 00-4p. However, Plaintiff's argument lacks merit. The ALJ found that Plaintiff was capable of sedentary work, and that she could alternate between sitting and standing at will at the workstation, which would not take her off task more than 10% of the workday, and the ALJ clarified that essentially, Plaintiff required jobs that can be performed either sitting or standing at her option (Tr. 30). Thus, this limitation indicates that Plaintiff can sit or stand at will, and there is no indication that it permits her to stand more than she sits. This limitation indicates that it is at Plaintiff's discretion on whether she chooses to sit or stand.

      The ALJ's hypothetical RFC to the vocational expert during the administrative hearing included the sit/stand limitation that is identical to the ALJ's RFC finding (Tr. 30, 73-75). The vocational expert testified that the sit/stand option and off task behavior is not covered by the DOT or the SCO, and any vocational judgments that he offered were outside the purview of those documents was based on his actual knowledge of real jobs in the real world and the knowledge accrued over thirty plus years as a vocational professional (Tr. 74). The vocational expert identified three sedentary jobs Plaintiff could perform with the limitations that are identical to the ALJ's RFC finding, and the ALJ found Plaintiff could perform these jobs at step five (Tr. 30, 37, 74-75).

      Plaintiff contends that she could not sit for extended periods, and suggests that in shifting positions she would have to be standing for significant portions of the workday and she

was not capable of the six hours of sitting envisioned by the definition of sedentary work. However, the RFC finding indicates that Plaintiff could shift positions at will, and thus does not indicate that she would sit for extended periods (Tr. 30).

Plaintiff contends that the ALJ erred in failing to include limitations related to her shoulder impairment in the RFC finding. Plaintiff further argues that the job of document preparer required frequent reaching and handling while the job of assembler required constant reaching and handling. However, the other job that Plaintiff was found capable of performing, video monitor, does not require any manipulative abilities (Tr. 37). Thus, Plaintiff would still be capable of performing this job even if manipulative limitations were included in the RFC finding. As there is n error regarding the physical RFC, remand will not be ordered on this point.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: November 29, 2021.

s/ William C. Lee
William C. Lee, Judge
United States District Court
